# Portland Ice Company, Appellant, *v.* Connor.

*Contract—Sale—Payment—Course of business—Rescission.*

Where, under a contract for the sale of a large quantity of ice, to be shipped as ordered, payments to be made weekly, payments are not made weekly, and this has continued for a year or more with the assent of the seller, the latter cannot, in view of the previous course of dealing, make a sudden, unconditional and absolute rescission, the purchaser being solvent, and not having wilfully refused to pay bills overdue. In such a case notice of the seller's intention to insist on a strict and literal compliance with the terms of the contract as to future bills should precede rescission

Argued Dec. 16, 1903. Appeal, No. 220, Oct. T., 1903, by plaintiff, from order of C. P. No. 1, Phila. Co., Sept. T., 1903, No. 4514, discharging rule for judgment for want of a sufficient affidavit of defense in case of Portland Ice Company v. Edward Connor, trading as Friendship Ice Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit for goods sold and delivered.

Rule for judgment for want of a sufficient affidavit of defense.

The opinion of the Superior Court states the case.

*Error assigned* was the order of the court.

*William Y. C. Anderson*, for appellant, cited: Kokomo Strawboard Co. v. Inman, 134 N. Y. 92 (31 N. E. Repr. 248); Nichols v. Steel Co., 137 N. Y. 471 (33 N. E. Repr. 561); Teufel v. Rowan, 179 Pa. 408; Huling v. Drexell, 7 Watts, 126; Atkinson v. Walton, 162 Pa. 219; Gardner v. Clark, 21 N. Y. 399; Forsyth v. North American Oil Co., 53 Pa. 168; Reybold v. Voorhees, 30 Pa. 116; Rugg & Bryan v. Moore, 110 Pa. 236.

*William J. Conlen*, for appellee, cited: Remington v. Irwin, 14 Pa. 143; Decamp v. Feay, 5 S. & R. 323; Mersey Steel, etc., Co. v. Naylor, L. R. 9 App. Cases, 434; Freeth v. Burr, L. R. 9 C. P. 208; Monarch Cycle Mfg. Co. v. Royer Wheel Co., 105 Fed. Rep. 324.

OPINION BY RICE, P. J., March 14, 1904:

In March, 1902, plaintiff contracted in writing with defendant to sell to the latter a certain number of tons of ice each year for four years at a stipulated price per ton, the same to be loaded on cars and shipped by plaintiff as ordered by defendant: "payments to be made weekly upon presentation of bills for the same." This action was brought to recover for installments delivered between May 26, 1903, and June 25, 1903. Plaintiff alleges in its statement the presentation of weekly bills for these installments and defendant's failure to pay them, and that "accordingly on June 18, 1903, said plaintiff cancelled and annulled said contract." The defendant alleges that on that date more than 3,000 tons were still to be delivered for the year 1903 under the contract; that the plaintiff persisted in its refusal to make further deliveries, and thereby defendant was forced to go into the market and purchase ice for the balance of the year at the prevailing market price, which was largely in excess of the price called for in the contract. In brief, he does not deny the indebtedness, but claims the right to a set-off for damages sustained by reason of the plaintiff's refusal to continue shipping ice. No question is raised as to the sufficiency of the statement of set-off contained in the affidavit of defense; the plaintiff's sole contention being that it had a right to rescind the contract on June 18, 1903, because of the defendant's failure to pay the bills in question upon presentation. The defendant admits that payments were not made weekly and "avers that it was not the practice of the plaintiff to insist on weekly payments, but that on the contrary, the defendant, by and with the permission of the plaintiff, paid for the ice at different periods . . . . ranging from one month to five months, and that in no case were weekly payments made by defendant; nor did plaintiff insist on such payments, although the amount due often exceeded the amount now claimed, and in one instance exceeded $1,000." In support of these averments defendant sets forth a list of installments delivered between April 1, 1902, and May 14, 1903, giving the dates of the several deliveries and payments.

This is an appeal from the refusal to enter judgment for want of a sufficient affidavit of defense. The question is whether the court ought to have held as a matter of law that

the plaintiff had a right to rescind without notice that thereafter payments weekly would be insisted upon. In the determination of that question the averment that " the defendant by and with the permission of the plaintiff paid for the ice at different periods exceeding in every instance a week " is to be taken to be true and capable of proof. The fair implication from this averment is, not merely that the defendant had been unpunctual in previous payments, but that the mode of payment adopted and continued for a year or more, although not strictly in accordance with the terms of the contract, was assented to by the plaintiff. If upon the trial of the case the defendant is able to sustain his allegations, the court would not be warranted in peremptorily charging the jury that the plaintiff was justified in rescinding the contract upon the ground that the defendant's failure to pay the bills as they were presented evinced an intention on his part to be no longer bound by the contract. That, according to many respectable authorities, is the test by which to determine the question of the vendor's right to rescind: Mersey Steel, etc., Co. v. Naylor, L. R. 9 App. Cas. 434, affirming judgment of the court of appeal in L. R. 9 Q. B. D. 648, and following the decision of the court of common pleas in Freeth v. Burr, L. R. 9 C. P. 208 ; Gerli v. Poidebard Silk Manufacturing Co., 57 N. J. L. 432 ; 30 L. R. A. 61. To say the least, the defendant would be entitled to have that question of fact submitted to the jury. The fact cannot be presumed in the disposition of the case as it is now presented. But assuming that that is not the test under the Pennsylvania authorities, how does the case stand? To state it in colloquial phrase the plaintiff did not say to the defendant, " I will deliver no more ice until you pay the bills that are due, and hereafter will insist on payment of each weekly bill as it is presented," but in effect said, " I elect to abrogate the contract so far as further performance by me is concerned, because of your failure to pay these bills on the days they were presented." The attempted rescission was unconditional and absolute. If this were the whole case, that is, if the previous course of dealing were to be left out of view, we are not prepared to say that the plaintiff might not take that position. It has support in the cases of Reybold v. Voorhees, 30 Pa. 116, and Rugg & Bryan v. Moore, 110 Pa. 236. In the last cited

case Justice GREEN said : " The defendants' witness said the
corn was to be paid for on sight drafts, but did not say at
what times or for what quantities of corn they were to be
drawn.    The plaintiff said drafts were sent with bill of lading
attached and he paid the first and refused to pay the second,
because he wanted to see whether the defendants had shipped
or would ship all the corn.    This was not a sufficient reason
for refusing to pay after he had accepted and received the
corn.    If then the contract required payments on deliveries,
and the plaintiff wilfully refused payment according to the
contract, he thereby authorized defendants to rescind at their
option."    So also in Easton v. Jones, 193 Pa. 147, the present
Chief Justice stated the law as follows : " There is nothing to
prevent parties, even in entire contracts, from agreeing to
partial payments pending the full performance, and that is
what was done in the present case.    The agreement in this re-
spect is very analogous to the familiar cases of contracts for
building.    There can be no question that in nearly all of such
cases the contract is entire, yet nearly all provide for advances
or payments at stipulated stages of the work, the avowed ob-
ject being to enable the contractor to complete the whole.
While plaintiff's failure in ability or intention to complete the
work will be a good defense, even to an action for a payment
stipulated to become due on a state of progress shown to be
reached, yet a refusal to pay such installment without that or
other legal excuse is such a breach of the contract as will
justify a rescission and entitle the plaintiff to recover pro tanto
for the work done.    This was expressly decided in Rugg et
al. v. Moore, 110 Pa. 236, a case very similar in its general
features to the present."    Nor are we prepared to say that the
previous course of dealing would estop plaintiff from insisting
on a strict compliance in the future with the terms of the
contract as to the time of payment for the installments to be
delivered, or from refusing to make further deliveries until
the bills in question were paid, or from rescinding on June 18,
1903, if the defendant had become insolvent.    But there is no
allegation of insolvency ; nor is it fairly inferable as the case
is now presented that the attempted rescission of the contract
was preceded by a wilful refusal on the defendant's part to pay
these bills.    On the contrary, assuming the truth of all the

averments of the affidavit, a jury would be warranted in inferring that the defendant was induced by the mode of performance, permitted and acquiesced in by the plaintiff, to believe that payment on the day of the presentation of the weekly bill was not regarded by the plaintiff as essential. Neither party treated it as a condition precedent to further performance by the plaintiff. The construction, which by their acts the parties had put upon the contract, is not to be ignored; and while it may have been erroneous and not binding in the future upon them, good faith would seem to require that notice of the plaintiff's intention to insist on a strict and literal compliance with the terms of the contract as to future bills should precede rescission; especially as there is nothing to show that interest on the unpaid bills in suit would not fully compensate plaintiff for the delay. In Forsyth v. North America Oil Co., 53 Pa. 168, it was held upon sound principle with reference to a contract of this nature that there was "no error in leaving it to the jury to determine the facts as to the mode of performance adopted by the parties, including the want of promptness in payment, alleged as the ground of rescission; and in instructing them that after a liberal indulgence allowed on both sides, the defendants could not suddenly rescind without a fair warning of their intention to insist upon a literal compliance with the contract in futuro." See also Hazelton Coal Co. v. Buck Mt. Coal Co., 57 Pa. 301; Price v. Beach, 20 Pa. Superior Ct. 291; Cogley v. Browne, 11 W. N. C. 224. We do not say that these cases are exactly parallel with the present in all particulars but they do recognize a principle which we think may safely and justly be applied to this case unless upon trial it presents a different aspect.

Appeal dismissed without prejudice, etc.