# Bounomo v. United Distiller's Company, Appellant.

*Appeals—Assignments of error—Practice of Superior Court.*

Assignments of error which do not conform to the rules of the Superior Court will not be considered on appeal.

*Contracts—Rescission of contracts—Waiver—Case for jury.*

In an action of assumpsit for breach of contract, the case is for the jury to determine whether or not the defendant has, by its actions, waived the right of cancellation, where it did not rescind the contract upon the first breach by the plaintiff, but continued to assert the same and subsequently cancelled the contract, without notice to the other party.

A party to a contract cannot both rescind it, and at the same time retain in its hands money advanced in consideration thereof. If it desired to cancel the contract, it could do so and return the excess consideration given on account, or it could waive the right to cancel, affirm the contract, and insist upon its fulfillment. It cannot do both, nor having definitely chosen its course, can it shift its position as might seem to its advantage, without fair notice to the other party to the agreement.

Argued April 11, 1921. Appeal, No. 18, April T., 1921, by defendant, from judgment of C. P. Erie County, Sept. T., 1918, No. 273, on verdict for plaintiff in the case of Tony Bounomo, use of Max Engelberg, v. United Distiller's Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit for breach of contract. Before WHITTELSEY, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,187.60 and judgment thereon. Defendant appealed.

114 BOUNOMO *v.* UNITED DISTILLER'S CO., Appel.

Assignment of Errors—Opinion of the Court. [77 Pa. Superior Ct.

*Errors assigned* were various rulings on evidence, the charge of the court, answers to points and refusal to grant a new trial.

*Louis Sachs,* and with him *Shreve & Shreve,* for appellant.—The court erred in submitting to the jury the question whether the defendant had waived the default of the plaintiff: Hennesy v. Bacon, 137 U. S. 78; Philson v. Mut. Life Ins. Co., 44 Pitts. L. J. 303; Shaw v. Turnpike Co., 2 P. & W. 454.

The bank was not the agent of the defendant and the court erred in so holding: Bergner v. Thompson, 74 Pa. 168; Antram v. Thorndell, 74 Pa. 442; Kollock v. Ridley Park Assn., 2 W. N. C. 408; Bean v. Howe; 85 Pa. 260; Lerch v. Bard, 153 Pa. 573.

*S. Y. Rossiter,* for appellee.

OPINION BY KELLER, J., July 14, 1921:

Four of the five assignments of error filed in this appeal do not conform to our rules. The first embraces more than one point, (Rule XIV); the second joins a remark of the judge made during the trial, to which no exception was taken, with a portion of the charge (Rules XIV and XV); the third does not contain a copy of the price lists or booklets the refusal of which as evidence is complained of, (Rule XVI); and the fifth does not set forth the motion for a new trial or the court's action thereon, and is not self-sustaining: Vanderslice v. Donner, 26 Pa. Superior Ct. 319. The remaining assignment, the fourth, complains of the action of the court below in refusing to grant a new trial on the ground that the verdict was against the evidence, but the evidence is not printed in full in the appendix; it omits many of the exhibits offered at the trial and read to the jury. We certainly could not convict the court below of error in this regard unless all the evidence submitted to the jury was before us. The appeal might well

be dismissed for lack of proper assignments of error, but as appellant's case was presented by counsel from another state who was probably not conversant with our rules, we have considered the appeal on its merits and find no reversible error in the record.

Bounomo, the legal plaintiff, a retail liquor dealer in Ashtabula, Ohio, on February 20, 1917, contracted with defendant for the purchase of twenty barrels of Kentucky whiskey. He paid $186.66 cash and gave fourteen notes for $40 each payable a month apart, the first one due March 20, 1917. The defendant gave Bounomo four unsigned warehouse receipts each purporting to certify the receipt by it at its distillery bonded warehouse in Kentucky of five barrels of Old Hardie whiskey held for Bounomo's account and subject to his order. The original certificates were presumably held by it as security for the notes. No whiskey was delivered to Bounomo at the time and the contract and certificates on their face provided that the whiskey should be shipped and title to the same should pass only upon compliance with the terms of contract and after payment of the notes in full, but Bounomo contended that the bargain with defendant's agent was that the whiskey was to be delivered from time to time as ordered not exceeding the credit standing to his account and defendant seems to have acquiesced in that arrangement. When the first note came due defendant sent it for collection to the Ashtabula bank where it was payable, but Bounomo refused to pay it unless he received some whiskey and after two months' negotiation, in the course of which defendant refused to cancel any part of the sale and blamed the delay in shipment on the railroad situation, defendant forwarded two barrels, with sight draft, covering the first note (due March 20th) and tax, attached to bill of lading which Bounomo on May 22d paid and lifted. The notes falling due April 20th and May 20th, respectively, were likewise forwarded by defendant to the bank for collection, and returned unpaid. Defendant thereupon on

June 11, 1917, forwarded the unpaid notes to the bank for collection by personal presentation and remittance less charges and at the same time wrote Bounomo insisting upon his paying the notes.  Bounomo replied a day or two later that an election would be held on the twentieth to decide whether the town should "go wet or dry......if the election goes to our favor I will order the balance due me, but if go dry, you will be kind enough to return my money that is in your possession, as your agent said."  To this defendant made no answer at all.  The election went dry and shortly thereafter Bounomo assigned his rights under the contract and in the certificates to Engelberg the use-plaintiff, who a day or two thereafter, (on July 22d), went to the bank, paid the April and May notes still remaining there for collection and either then or shortly thereafter offered to pay all the outstanding notes.  The bank sent defendant a draft for the two notes paid by Engelberg, less its charges, which was returned by defendant in a letter dated August 2, 1917.  Engelberg, through his attorneys, offered to carry out the contract and pay the notes, but defendant refused, stating that it had cancelled the contract.  This action followed to recover the damages which the use-plaintiff alleged he suffered by defendant's refusal to perform the contract.

When Bounomo failed to pay the first note, due March 20th, two courses were open to the defendant.  It could rescind the contract, in which event it should notify Bounomo of its action and return his notes and any money in its hands belonging to him, or it could waive this right, (Shaw v. Turnpike Co., 2 P. & W. 454), affirm the contract and insist on the payment of the notes.  It could not do both, nor having definitely chosen its course could it shift its position as might seem to its advantage, without fair notice to the other party to the contract: Forsyth v. North American Oil Co., 53 Pa. 168; Portland Ice Co. v. Connor, 24 Pa. Superior Ct.

493; Goff-Kirby Coal Co. v. Marine Coal Co., 31 Pa. Superior Ct. 60.

The defendant did not rescind the contract when Bounomo failed to pay the first note. On the contrary it accepted payment two months later and complied with his demand for shipment of some of the whiskey, and in the meantime it forwarded the second and third notes for collection and refused to cancel any part of the sale. When these notes were not paid at maturity, because no more whiskey was delivered, it returned them to the bank for presentation again and wrote Bounomo insisting upon their being paid, and when he wrote it of the coming election and of what he proposed to do if the town went dry it made no reply agreeing to such a cancellation by him of the contract and did not recall the notes which it had employed the bank to collect for it. It must be remembered that during all this time the defendant had in its possession money which would have to be returned to Bounomo, if the contract were cancelled, and that it was not being injured by waiving exact compliance with the terms of the contract and extending the payment of the notes. There is not one word in the testimony before us of notice from it to the plaintiff following these relaxations from the strict terms of the contract, of its intention to require a return to the terms in the future, before it attempted to cancel the contract for failure to pay the second and third notes; and even then it did not remit the balance in its hands nor return the outstanding and unpaid notes. The decision to stand on the strict terms of the contract seems to have come suddenly following a rise in the market price of whiskey and without warning to Bounomo who was insisting on the shipment of whiskey as he paid the notes. We are of opinion that the court would have been justified in charging the jury that the evidence, if believed by them, was sufficient to constitute a waiver by the defendant of exact compliance by Bounomo with the terms of the contract, and that notice of its intention to insist

upon their strict performance in the future was necessary before it could cancel the contract. No harm was done the defendant by submitting the question of waiver to the jury.

We are of opinion that the plaintiff's witnesses on the question of damages were qualified to testify on the market price of the whiskey at the time of the alleged breach of contract. Their credibility was for the jury. The verdict, while large, was not unsupported by evidence. The calculation submitted by defendant to prove its excessiveness is erroneous, for it in effect deducts the notes twice; the notes were included in the contract price of the whiskey which was subtracted from the market price at the date of breach in determining the damages suffered.

Not having the publications which were excluded by the court before us we are unable to state whether they were standard daily market quotations such as under certain circumstances are admissible in evidence or merely private price lists which are not admissible. The defendant did not limit its offer to any parts or items of these publications and as its witness Kramer testified fully on the subject and stated that he based his testimony on these publications, we cannot say that the defendant was injured by their exclusion.

The judgment is affirmed.